IN THE CIRCUIT COURT FOR COCKE COUNTY, TENNESSEE
AT NEWPORT

| | |
|---|---|
| DAVID LOYD, | ) |
| PLAINTIFF, | ) |
| vs. | ) |
| | ) DOCKET NO.: 32,249 I |
| WAL-MART ASSOCIATES, INC. | ) |
| DEFENDANTS. | ) |
| | ) WORKERS' COMPENSATION |
| | ) |
| | ) |

**PETITION FOR CIVIL CONTEMPT AND TO ENFORCE THE ORDER APPROVING COMPROMISE AND SETTLMENT AND COMPEL COMPLIANCE WITH THE OBLIGATIONS OF THE PARTIES AND FOR AN AWARD OF ATTORNEY FEES AND EXPENSES**

Comes now David Loyd, by and through counsel, pursuant to the approved settlement in this case; Tenn. Code Ann. § 50-6-204 and Tenn. Code Ann. § 29-9-102, and hereby files his petition for civil contempt against the Defendant, to enforce the Order of Compromise and Settlement and compel compliance with the obligations of the parties and for an award of attorney fees. Mr. Loyd respectfully seeks to compel Walmart Stores, Inc. (hereinafter referred to as Walmart) to comply with its obligations under the terms of the final order of this claim, specifically Mr. Loyd's right to reasonable and necessary future medical treatment and payment of the same. Additionally, Mr. Loyd seeks an award of attorney fees and expenses. As grounds, Mr. Loyd would show as follows:

## FACTS

This is a workers' compensation case involving injuries to the cervical spine and left shoulder. On December 20, 2009, Mr. David Loyd suffered a compensable injury to his neck and left shoulder while working for Walmart. Dr. Paul Johnson was the authorized treating

STATE OF TENNESSEE, COCKE COUNTY
I, Kristy L. Nease, Clerk of the Circuit Court of Cocke County, Tennessee, certify that the foregoing is a true copy of the original bill filed in this cause. Witness my hand and official seal of office on this ____ day of _____, 20___
_____
Circuit Court Clerk

1

**EXHIBIT B**

physician [hereinafter alternately referred to as ATP[1]] for both injuries and he performed surgery on the cervical spine pre settlement. The ensuing workers' compensation claim was compromised and settled. This Honorable Court approved the Order of Compromise and Settlement on December 17, 2013. The Order Approving Compromise and Settlement of a Workers' Compensation Claim specifically states as follows:

> **"It is further ORDERED and ADJUDGED that Wal-Mart shall continue to provide Loyd reasonable and necessary medical treatment directly and solely attributable to the injury consistent with T.C.A. § 50-6-204, with all such expenses to be pre-approved and authorized by Wal-Mart, and said treatment to be furnished by a physician(s) designated by Wal-Mart." See Exhibit A.**

In May of 2014, after Mr. Loyd's neck surgery, the authorized treating physician, Dr. Paul Johnson stopped seeing patients under workers' compensation. [He opined on October 27, 2011 that he recommended neck surgery for Mr. Loyd in March of 2010 and on his deposition date still recommended the surgery. A copy of his deposition will be provided upon request.] The record will reflect that surgery wasn't performed until February 6, 2012. Dr. Johnson's refusal to continue to treat Mr. Loyd under workers' compensation triggered the statutory necessity of a new C-42 panel. Upon request of Mr. Loyd's counsel and after some time, Attorney Melissia Ball was finally able to obtain a valid panel and Mr. Loyd chose Dr. Morgan Lorio as his authorized treating physician for his neck and shoulder. Dr. Lorio ordered an MRI which Mr. Loyd had performed in Newport, Tennessee with Dr. Lorio's agreement. The Defendant failed or refused to pay for the MRI so it took several months to obtain the report and imaging but eventually Ms. Ball was able to procure the same for Dr. Lorio who ultimately referred Mr. Loyd to Dr. John Testerman for possible left shoulder surgery. The Defendant

---

[1] Generally speaking, the physician selected from a panel of physicians is called the authorized treating physician (ATP). This doctor directs medical care and treatment for the work injury. See generally Tenn. Code Ann. §50-6-204

2

failed or refused to pay for the MRI ordered by Dr. Lorio which was performed in Newport, Tennessee and failed or refused to schedule an appointment with Dr. Testerman for treatment of Mr. Loyd's shoulder. Mr. Loyd, through his attorney, Melissia R. Ball filed a Request for Assistance in June of 2015. After the filing, the Defendant capitulated and allowed Mr. Loyd to see Dr. Testerman and later paid the MRI bill, other outstanding bills, unpaid mileage and even approved the shoulder surgery but refused to pay attorney fees. An Order was entered awarding attorney fees to Attorney Melissia Ball on August 27, 2015 by a Workers' Compensation Specialist. **See Exhibit B.**

Fast forwarding to 2019, Mr. Loyd began seeing Dr. Suresh Nekuri in the fall of 2019 for back pain and numbness and tingling in his arms and legs not believed to be associated with his workers' compensation claim. Dr. Nekuri suggested Mr. Loyd return to his workers' compensation doctors for treatment of the ongoing issues with his work injuries. Mr. Loyd contacted Attorney Melissia Ball, since his most recent authorized treating physicians, Dr. Lorio and Dr. Testerman were no longer in business as Neuro-Spine Solutions. Ms. Ball then straightaway contacted the defense attorney requesting a panel. After a series of invalid form C-42 panels, two valid panels were finally submitted; one for the neck and one for the shoulder. Mr. Loyd chose Dr. Hovis from the **form C-42** shoulder panel on March 16, 2020. He chose Dr. Yoakum for his neck panel choice on that same date. **See Collective Exhibit C.**

On June 9, 2020, Mr. Loyd through his attorney of record finally received notice that he was scheduled to see his form C-42 shoulder panel choice; Dr. Hovis on June 25, 2020. Mr. Loyd attended the June 25, 2020 visit with Dr. Hovis. Subsequently, Mr. Loyd through his attorney Ms. Ball was provided a copy of Dr. Hovis' report over a month later on July 29, 2020 and learned that the June 25, 2020 visit had not been scheduled as an authorized treating

3

physician visit under the Workers' Compensation Laws of Tennessee. Instead, the June 25, 2020 visit was arranged by Walmart as an **Independent Medical Exam [hereinafter referred to as IME]** for **both** the shoulder and the neck. Mr. Loyd's attorney immediately contacted Defendant's counsel requesting 1) a new neck panel pursuant to statute and 2) that Dr. Hovis' tainted records be stricken from the record. Defendant's counsel denied scheduling an IME despite payments and correspondence to the contrary. Defendant's counsel also later prematurely forwarded the ill-gotten records to another panel choice despite Plaintiff's objections. Proof will be offered during this matter.

On August 14, 2020, Mr. Loyd, through his attorney filed a Request for Mediation [which is the new procedure in Tennessee in lieu of a Request for Assistance through the State of Tennessee Bureau of Workers' Compensation.] The Request for Mediation for medical benefits was filed over 8 months after Mr. Loyd's initial request for medical treatment. On August 26, 2020, the Defendant filed a Response indicating that they had located Dr. Testerman and scheduled an appointment for Mr. Loyd for September 14, 2020. Throughout this matter, Defendant has adamantly denied scheduling an IME or payment of an IME and insists Dr. Hovis chose to title his report as an IME. Mr. Loyd was able to see Dr. Testerman who ordered testing and actually performed shoulder surgery on Tuesday, March 16, 2021. After the Benefit Review Report Waiver was issued, [Exhibit G] Mr. Loyd began receiving requests for payment for unpaid bills and telephone calls regarding unpaid workers' compensation charges for testing ordered by Dr. Testerman; including calls concerning the surgery charges for the March 16, 2021 shoulder surgery performed by Dr. Testerman. **See Affidavit of David Loyd Exhibit D.**

Mr. Loyd was not able to see his March 16, 2020 neck panel choice, Dr. Yoakum. Walmart did not offer a valid new panel despite numerous requests until August 26, 2020

4

wherein after written assurances that the IME records would not be forwarded to the panel selection choice, he chose Dr. David Pryputniewicz.

For purposes of workers' compensation coverage, the Defendant Walmart was insured by National Union Fire of Pittsburgh, PA with a third party administrator identified as Claims Management Inc. for this work injury.

Walmart individually or through its agents, insurer, employees and/or representatives failed or refused to provide medical treatment to the employee, Mr. Loyd.

When a valid panel was finally proffered, Walmart individually or through its agents, insurer, employees and/or representatives willfully scheduled the visit as an IME contrary to the Workers' Compensation laws of the State of Tennessee.

Mr. Loyd is receiving bills and telephone calls about charges incurred as a result of Dr. Testerman's treatment and surgery. See Mr. Loyd's Affidavit.

A follow up appointment with Dr. Pryputniewicz has not been scheduled since a mix up in appointment dates. See Mr. Loyd's Affidavit.

Walmart individually or through its agents, insurer, employees and/or representatives failed or refused to provide a proper cervical (neck) panel or a proper shoulder panel and as evidenced by their history of bad behavior and ongoing bad behavior and egregious conduct have caused undue emotional distress and mental pain and suffering as well as physical pain and suffering in failing to promptly provide medical treatment to Mr. Loyd and have caused him to doubt the supremacy of Orders from our tribunal and further to be forced to procure the services of an attorney to help him obtain the benefits provided under the Laws of the State of Tennessee and by Court Order.

According to Walmart Inc., Form 10-K filing with the United States Securities and

5

Exchange Commission for 2019, **Walmart's** gross **profit** for the twelve months ending April 30, 2019 was over **ONE HUNDRED TWENTLY-NINE BILLION** ($129.012B), a 0.73% increase year-over-year. **Walmart's** annual gross **profit** for 2019 was over **ONE HUNDRED TWENTY-NINE BILLION** ($129.104B), a 1.7% increase from **2018**. **Walmart's** annual gross **profit** for **2018** was over **ONE HUNDRED TWENTY-SIX BILLION** ($126.947B), a 1.87% increase from 2017. That is **THREE HUNDRED FIFTY-THREE MILLION, SEVEN HUNDRED NINE THOUSAND, FIVE HUNDRED EIGHTY-NINE DOLLARS AND 04 CENTS ($353,709,589.04)** a day, which is **FOURTEEN MILLION, SEVEN HUNDRED THIRTY-SEVEN THOUSAND, EIGHT HUNDRED NINETY-NINE DOLLARS AND 54 CENTS ($14,737,899.54)** an hour; **TWO HUNDRED FORTY-FIVE THOUSAND, SIX HUNDRED THIRTY-ONE DOLLARS AND 66 CENTS ($245,631.66)** per minute and **FOUR THOUSAND NINETY- THREE DOLLARS AND 86 CENTS ($4,093.86)** per second. Walmart's Form 10-K can be found at:

https://www.sec.gov/Archives/edgar/data/104169/000010416919000016/wmtform10-kx13120319.htm#s25D406F0AEA257A487237EDC74B45CFC

Walmart annual gross profit for 2020 according to Walmart's 2020 10-K is still well in excess of **ONE HUNDRED TWENTLY-NINE BILLION** ($129.359B). Walmart's Form 10-K for 2020 can be found at:

https://www.sec.gov/Archives/edgar/data/0000104169/000010416920000011/wmtform10-kx13120020.htm

For illustration purposes, plaintiff will use 2019 figures since plaintiff should have been provided medical treatment in December 2019.

# LAW AND ARGUMENT

## A. Subject Matter Jurisdiction

The Special Workers' Compensation Panel addressed the issue of subject matter jurisdiction in future medical issues in the case of <u>Robertson v. Roadway Express, Inc.</u>, Appeal No. E2011-01384-WC-R3-WC, 2012 WL 2054170 (Tenn. Workers Comp. Panel June 8, 2012) (copy attached as **Exhibit E**). In that case, the employee had not exhausted the benefit review process at the Department of Labor, filing a motion for benefits instead. Even though the Court had previously approved a settlement of the underlying workers' compensation claim years before the future medical issue came up, the Special Panel held that, "based on statutory provisions and rules noted herein, parties are required to exhaust the benefit review conference process as a condition precedent to filing suit." <u>Id</u>. at *7.

The Panel in <u>Robertson</u> did not hold that an injured worker who had already exhausted the administrative process prior to the resolution of their claim at court must re-exhaust the benefit review process. In fact, the Workers' Compensation Statute simply states, "No claim for compensation under this chapter shall be filed with a court having jurisdiction to hear workers' compensation matters, as provided in §50-6-225, until the parties have exhausted the benefit review conference process provided by the division of workers' compensation." Tenn. Code Ann. §50-6-203(a)(1).

Nevertheless, in the case of <u>Tristar Centennial Medical Center v. Dana Pugh</u>, Appeal No. M2016-02470-SC-R3-WC, 2018 WL 935724 (Tenn. Workers Comp. Panel Dec. 4, 2017) (copy attached as **Exhibit F**), the Special Panel held that "the dispute between the parties that is the basis of this court action materialized well after the BRC" and "although a BRC was held initially in this cause, it did not involve the issues currently before the Court. Therefore,

7

Employee failed to exhaust the administrative requirements, and the trial court never acquired subject matter jurisdiction over this claim." Id. at *4.

Under this new standard, requiring an injured worker to re-exhaust the administrative process for any future medical issue that arises after a previous exhaustion, Mr. Loyd was required to return to the Department of Labor prior to filing this matter with the court. As such, Mr. Loyd filed a Request for Mediation on August 14, 2020. The parties participated in the administrative process, and an electronic Benefit Review Report Waiver was issued on January 4, 2021. Having re-exhausted the administrative process, specifically to include this future medical issue, this Court has regained subject matter jurisdiction and Mr. Loyd, by and through his attorney of record brings this action. A copy of the Benefit Review Report is attached as **Exhibit G**.

### B.     Mr. Loyd's right to medical treatment.

Mr. Loyd is entitled to future medical treatment based on the Workers' Compensation Laws of the State of Tennessee and pursuant to the Court Order attached hereto.

Tenn. Code Ann. §50-6-204(a)(1)(A) states:

The employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other reasonable and necessary apparatus, including prescription eyeglasses and eye wear, such nursing services or psychological services as ordered by the attending physician and hospitalization, including such dental work made reasonably necessary by accident as defined in this chapter.

For injuries occurring prior to July 1, 2014, the statute defines "Employer" as including any individual, firm, association or corporation, the receiver or trustee of the individual, firm, association or corporation, or the legal representative of a deceased employer... If the employer

8

is insured, it shall include the employer's insurer, unless otherwise provided in this chapter...

Tenn. Code Ann. §50-6-102(11)

Under section 204(a)(1)(A), Walmart must furnish Mr. Loyd medical treatment "made reasonably necessary" by his injury. As the ATP for the shoulder injury, Dr. Testerman's treatment is medically necessary. Moreover, after the filing of the Request for Mediation and subsequent panel choice, Dr. Pryputniewicz's became the ATP for the neck injury. Further, Tennessee law has long followed "the rule that all the medical consequences and sequelae that flow from the primary injury are compensable." Rogers v. Shaw, 813 S.W.2d 397, 400 (1991) citing 1 A. Larson, The Law of Workmen's Compensation § 13.11 (1990).

As for a panel choice, Tenn. Code Ann. §50-6-204(a)(4)(A) states:

> The injured employee shall accept the medical benefits afforded under this section; provided, that, except as provided in subdivision (a)(4)(B) or (a)(4)(C), the employer shall designate a group of three (3) or more reputable physicians or surgeons not associated together in practice, if available in that community, from which the injured employee shall have the privilege of selecting the operating surgeon and the attending physician; and provided, further, that the liability of the employer for the services rendered the employee shall be limited to the charges that are established in the applicable medical fee schedule adopted pursuant to this section.

Further, Tenn. Code Ann. §50-6-204(a)(4)(E) states:

> The employer shall provide the applicable panel of physicians to the employee in writing on a form prescribed by the division, and the employee shall document in writing the physician the employee has selected and the employee shall sign and date the prescribed form. The employer shall provide a copy of the completed form to the employee and shall maintain a copy of the completed form in the records of the employer and shall produce a copy of the completed form upon request by the division.

Of course, after a panel selection, it is understood that the selected physician becomes the authorized treating physician of the injured worker.

The fact that Mr. Loyd is receiving bills and being contacted by the providers for outstanding debts associated with his workers' compensation injury and treatment purportedly

9

authorized by the Defendant with Dr. Testerman is contrary to Tenn. Code Ann. § 50-6-122

(2008) which reads as follows:

> (3) Section 50-6-204(a)(4), relative to medical care, shall apply to any managed care methodology employed pursuant to this section. For the purposes of § 50-6-204(a)(4), physicians and surgeons in the same HMO or PPO are considered to be associated in practice together if they share a common employer for purposes of their clinical practice, or are associated together in a group practice.
> **(b) A health care provider shall not pursue a private claim against a workers' compensation claimant for all or part of the costs of health care services provided to the claimant by the provider unless: [Emphasis added]**
> **(1) The injury is finally adjudicated not to be compensable under this chapter;**
> (2) The physician or surgeon, as provided in § 50-6-204, who was not authorized by the employer at the time the services were rendered, knew that the physician or surgeon was not an authorized physician or surgeon; or
> **(3) The employee knew that the physician or surgeon was not an authorized physician or surgeon; provided, that subdivision (b)(2) and this subdivision (b)(3) do not apply to emergency care.**
> **(c) A health care provider shall not employ a collection agency or make a report to a credit bureau concerning a private claim against an employer for all or part of the costs of medical care provided to an employee that are not paid by the employer's workers' compensation insurer** without having first exhausted all administrative remedies as provided by § 50-6-226(a)(4). The medical director may include the insurer in the administrative process. [Emphasis added.] Tenn. Code Ann. tit. 50, C. 6 App. (West)

## C. Authorization of Mr. Loyd's treatment

Mr. Loyd's injury occurred in 2009 during which time workers' compensation laws were to remedial. Mr. Loyd needed medical treatment and should have been offered medical treatment. "The rule of common law requiring strict construction of statutes in derogation of common law shall not be applicable to this chapter, but this chapter is declared to be a remedial statute, which shall be given an equitable construction by the courts, to the end that the objects and purposes of this chapter may be realized and attained." T.C.A. 5-6-116 (2008)[2]

It is long-standing law that there is "a presumption that treatment furnished by physicians designated by the employer is necessary and the charges reasonable" in a workers' compensation claim. Russell v. Genesco, Inc., 651 S.W.2d 206, 211 (Tenn. 1983)(copy attached as **Exhibit**

---

[2] This section was amended, effective July 1, 2014, for injuries occurring on or after July 1, 2014 to state the workers' compensation law "shall not be remedially or liberally constructed ... and ... shall not be construed in a manner favoring either the employee or the employer."

10

**H**).  Additionally, "all the medical consequences and sequelae that flow from the primary injury are compensable."  Rogers v. Shaw, 813 S.W.2d 397, 400 (Tenn. 1991)(copy attached as **Exhibit I**). It is long-standing law that this Court is not bound by the determinations of utilization review, and the Court does have jurisdiction to hear matters such as these even in the face of utilization review denial.  See, Kilgore v. NHC Healthcare, 134 S.W.3d 153 (Tenn. 2004)(copy attached as **Exhibit J**).

The evidence in this case shows that Dr. Testerman was the authorized treating physician, (if not by panel, then by agreement) after direct referral from Dr. Lorio and the employer approved and paid for a shoulder surgery; and therefore his treatment is presumed necessary.

It is anticipated that Walmart may argue that the outstanding medical issues have been resolved in that Mr. Loyd is treating with Dr. Testerman, an authorized treating physician for the shoulder and Dr. Pryptniewicz has been approved as an authorized treating physician for the cervical spine.  Mr. Loyd would reiterate that it took over two hundred and sixty-six days (266) to get a valid panel with a neck specialist and just an appointment with Dr. Testerman.  It is anticipated that Mr. Loyd's testimony will reflect that it took two hundred and eighty-five days from his initial request to actually see Dr. Testerman, his previous authorized treating physician. This failure or refusal to provide appropriate medical treatment is unreasonable, unacceptable and inexcusable.  Walmart willfully failed or refused to provide medical treatment under the statute.  The fact that medical treatment is now being provided simply put does not negate Walmart's responsibility under the law; and under order of Court. Neither does it erase the fact that while withholding medical treatment, Walmart brazenly underhandedly and willfully attempted to manipulate the C-42 panel choice's opinion from that of a treating doctor to that of an independent medical examiner under the guise of statutory *treatment*.  Such free and

11

intentional action is shocking, contemptuous and reprehensible.

Additionally, Mr. Loyd has testified by affidavit that his bills for treatment ordered by Dr. Testerman remain unpaid. This is contrary to statute and Walmart should pay said bills immediately. Non-payment of said bills requires additional work by Mr. Loyd's counsel.

Mr. Loyd has testified that a follow up with Dr. Putpatniewicz has not been scheduled. This is contrary to statute and requires ongoing work of Mr. Loyd's counsel.

Because Mr. Loyd chose Dr. Hovis from a form mandated by the state of Tennessee as required by the Workers' Compensation Laws of the State of Tennessee; the law requires that this visit be scheduled as an authorized treating physician (ATP) visit *for treatment*. Scheduling the visit as an IME (for evaluation—not treatment) in lieu of a visit with an authorized treating physician in this particular situation is unethical, unacceptable and contrary to the Workers' Compensation Laws of the State of Tennessee.

Upon learning of this brazenly unethical action, Mr. Loyd's attorney immediately contacted Defendant's counsel requesting a new neck panel and that Dr. Hovis' tainted records be stricken from the record. Defendant's counsel denied scheduling an IME despite payments and correspondence to the contrary. Defendant's counsel also later prematurely forwarded the ill-gotten records to another panel choice despite Plaintiff's objections. Proof will be offered during this matter. Such failure, denial or refusal to provide medical treatment for both the neck and the shoulder is a willful violation of the Court's December 17, 2013 Court Order.

This matter boils down to, in essence the defendant, Walmart's habitual contempt of the Workers' Compensation laws controlling this claim. By history,

1) a twenty-three month delay in approval for surgery ordered by the authorized treating physician;

12

2) an almost 3 year delay of payment by CMI of an MRI bill ordered, presumed correct and utilized by the authorized treating physician in his treatment of the plaintiff and

3) now a *de novo* review of the reasonableness and necessity of an over nine month delay in receiving treatment for his work injury (during which time the Employer as defined by statute unethically scheduled an IME instead of a treating physician trustingly chosen as an ATP).

Was the failure to provide medical treatment civil contempt, criminal contempt or both? Plaintiff would argue it was both. Yet again, medical <u>treatment</u> in compliance with the law was only provided *after* employee was forced to hire an attorney and file for assistance through the State of Tennessee.

4) Additionally, Mr. Loyd's bills remain unpaid and he continues to suffer from stress and anxiety over the calls and bills regarding treatment for his 2009 work injury.

## C. Civil and Criminal Contempt of Court

The Tennessee Supreme Court lists four essential elements to a civil contempt claim based on disobedience of a court order: "First, the order alleged to have been violated must be 'lawful.' Second, the order...must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be 'willful.'" <u>Konvalinka v. Chattanooga-Hamilton County Hosp. Authority</u>, 249 S.W.3d 346, 354-55 (Tenn. 2008)(copy attached as **Exhibit K**).

"A lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties." <u>Id.</u> Here, the workers' compensation order is certainly lawful, and

13

there can be no argument to the contrary. For the second element to be met, "A person may not be held in civil contempt for violating an order unless the order expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden." Id. Mr. Loyd's settlement order, along with the relevant workers' compensation statute provisions, is certainly clear and provides that he is entitled to all "reasonable and necessary medical treatment directly and solely attributable to the injury consistent with T.C.A. § 50-6-204, with all such expenses to be pre-approved and authorized by Wal-mart, and said treatment to be furnished by a physician(s) designated by Wal-Mart."

As to the third element, "The quantum of proof needed to find that a person has actually violated a court order is a preponderance of the evidence." Id. at 356. The proof will show at the hearing of this matter that the Defendants have in fact violated the settlement order as it relates to Mr. Loyd's right to future medical treatment. Mr. Loyd will meet this burden placed upon him by a preponderance of the evidence.

The final element, willfulness, does not require the same standard of culpability that is required in criminal context. Instead, willful conduct in civil contempt proceedings "consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is 'willful' if it is the product of free will rather than coercion. Thus, a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." Id. at 357. The proof will show that the Defendant willfully denied Mr. Loyd appropriate medical treatment and/or failed or refused to provide him with medical treatment afforded him under the law and under the orders of this Honorable Court.

"Civil contempt sanctions are remedial and coercive in character, designed to compel a party to comply with the court's order." State ex rel. Flowers v. Tennessee Trucking Ass'n Self

14

Ins. Grp. Trust, 209 S.W.3d 602, 613 (Tenn. Ct. App. 2006)(copy attached as **Exhibit L**). "Fines for civil contempt may either coerce the contemnor to comply with the court order or serve to compensate the injured party. Accordingly, under the plain language of Tennessee Code Annotated Section 29-9-105, damages are available to a party injured by a contemnor's acts in violation of a court's order." Overnite Transp. Co. v. Teamsters Local Union No 480, 172 S.W.3d 507, 511 (Tenn. 2005) (internal citations omitted)(copy attached as **Exhibit M**). "When the contempt consists of the performance of a forbidden act, the cessation of the contemptuous conduct after the entry of the order prohibiting that conduct does not preclude a finding of civil contempt and an award of damages." Id.

Criminal contempt, on the other hand, is "intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society. Therefore, sanctions for criminal contempt are generally both punitive and unconditional in nature." Black v. Blount, 938 S.W.2d 394, 398 (Tenn. 1996) (internal citations omitted)(copy attached as **Exhibit N**). "While criminal contempt may arise in the course of private civil litigation, such proceedings, 'in a very true sense raise an issue between the public and the accused.' In the trial of a criminal contempt case, therefore, guilt of the accused must be established by proof beyond a reasonable doubt." Id. (internal citations omitted).

Mr. Loyd requests that the Court make a finding of civil contempt, criminal contempt, or both against Walmart. Not only has Walmart wronged Mr. Loyd directly by refusing or failing to comply with the Court Order and provide medical treatment pursuant to the Workers' Compensation Laws of the State of Tennessee but also misrepresenting their actions regarding a C-42 paneled physician versus an unsanctioned nonconsensual IME on his shoulder and again on his neck.

15

Mr. Loyd submits that Walmart Inc. will not be deterred from further disobedience of the Court's Order should they only face what amounts to less than a light slap on the wrist. Nor would a minor contempt finding give the appropriate weight to the Defendant Walmart's disregard for the rule of law. As addressed above, Walmart Inc. is a multi-billion-dollar corporation. Walmart, Inc. earns **profits** of $245,631.66 each and every **minute** of each and every day. Framed another way, a person making $50,000.00 per year earns about as much every **month** as Walmart Inc. makes every **second** of every day. In order to coerce the Employer's future compliance with the Court's Order, and in order to vindicate and dignify the judicial system, the Employer must be ordered to pay a reasonable amount that reflects the magnitude of the issues **and** the corporation itself. Mr. Loyd submits that fining the Employer, Walmart Inc. a single day of profit meets the requirements of reasonableness.

As Mr. Loyd has offered brief testimony by Affidavit attached hereto but will appear in person should the Court allow live testimony, that over the fourteen months, he has worried daily about his physical wellbeing and suffered mental anguish. He is now worrying about medical bills related to treatment ordered by the ATP. He will further testify that an appointment or visit should have been scheduled for him within days of his request—certainly not two hundred sixty-six (266) days. He agreed to the settlement partly because the Court assured him he had "open medical" and "Walmart had to pay for his medical treatment." This was clearly set out in the settlement paperwork and by Order of this Honorable Court. He will testify that it took approximately twenty-three months to get his neck surgery from Dr. Johnson the ATP approved. It is expected that this testimony will be unrefuted. He will testify that there was a delay in obtaining medical treatment in 2014/2015 despite his request and it took over a year to get his unpaid MRI bill paid by the defendant, Walmart which further delayed his treatment. It is

16

anticipated that medical records and payment records will confirm his testimony and again that his testimony will be unrefuted. Based on this prior behavior, he will testify that Walmart has a pattern or habit of failing to comply with the Court Order until forced to do so. Walmart, Inc. should have to forfeit a day of profit to atone. As broken down above, each and every day, Wal-Mart, Inc. earns $353,709,589.04. This would be the same as fining a person with a $50,000.00 a year salary an amount of $136.99, hardly an outrageous number but one that is certainly recognizable and appreciable as a fine. Regrettably, Mr. Loyd has walked this path before. Medical treatment means medical treatment as set out in the Court Order.

It is anticipated that Dr. Testerman and Dr. Pryputniewicz will both testify that medical treatment and care for his conditions was and is appropriate.

It is further anticipated that adequate proof can be provided of the unpaid bills leading up to and following Mr. Loyd's surgery.

It is further anticipated that proof will show that a follow up visit with Dr. Pryputniecwicz has not be scheduled at least to date.

**D. Attorney Fees**

Tenn. Code Ann. §50-6-204(b)(2) states,

> In addition to any attorney fees provided for pursuant to § 50-6-226, a court may award attorney fees and reasonable costs to include reasonable and necessary court reporter expenses and expert witness fees for depositions and trials incurred when the employer fails to furnish appropriate medical, surgical and dental treatment or care, medicine, medical and surgical supplies, crutches, artificial members and other apparatus to an employee provided for pursuant to a settlement or judgment under this chapter.

The Special Panel held in <u>Sieber v. Methodist Medical Center of Oak Ridge</u>, Appeal No.

17

03S01-9801-CV-00006, 1999 WL 178627 (Tenn. Workers Comp. Panel Mar. 25, 1999) (copy attached as **Exhibit O**), that "to require the injured worker to pay his or her own attorney fees incurred in such a case as this would place an undue hardship on the injured worker and defeat the purposes of the Workers' Compensation Law." Id. at *5. In that case, the employee-plaintiff settled her claim and retained open medical benefits. CMI attempted to "de-authorize" the treating physician, and the employee-plaintiff was forced to file a motion through counsel to compel the employer to comply with the terms of the settlement agreement and provide authorized treatment. The Court remanded the case in Sieber for an award of attorney fees, as the employee-plaintiff was successful on the merits of the motion to compel post-settlement medical treatment.

In Wright ex rel. Wright v. Wright, 337 S.W.3d 166 (Tenn. 2011)(copy attached as **Exhibit P**), the Tennessee Supreme Court addressed the factors and procedure a trial court should apply when determining a reasonable award of attorney fees. The Court declined to "require that trial courts rely solely or even primarily on the lodestar computation in determining" a reasonable fee, pointing out that "our existing multi-factor analysis already includes the time and labor involved in the case and the fee customarily charged in the locality." Id. at 180. The Court "decline[d] to make those factors the paramount or exclusive considerations because [Rule of Professional Conduct] 1.5(a) articulates a number of other factors that are also important to determining a reasonable attorney's fee." Id.

Rule of Professional Conduct 1.5(a) states,

> A lawyer shall not make an agreement for, charge, or collect an
> unreasonable fee or an unreasonable amount of expenses. The
> factors to be considered in determining the reasonableness of a fee
> include the following:
> (1) the time and labor required, the novelty and difficulty of the
> questions involved, and the skill requisite to perform the legal

18

service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent;

(9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) whether the fee agreement is in writing.

The Court did not place special emphasis on any of these factors, however, and reiterated that "the determination of what constitutes a reasonable fee is still a subjective judgment based on evidence and the experience of the trier of facts and the reasonableness of the fee must depend upon the particular circumstances of the individual case." Wright ex rel. Wright, 337 S.W.3d at 181. (internal citations omitted). The Court also addressed the procedure a trial court should follow in assessing attorney fees. "[T]he trial court should develop an evidentiary record, make findings concerning each of the factors, and then determine a reasonable fee that 'depend[s] upon the particular circumstances of the individual case.' To enable appellate review, trial courts should clearly and thoroughly explain the particular circumstances and factors supporting their determination...." Id. at 185-86.

In this case, Mr. Loyd retained the services of Myers & Ball, LLP to assist him in obtaining denied medical benefits and assisting him in procuring authorized treating physicians for his neck and shoulder based on a Court Order as a result of a work injury. Myers & Ball, LLP, specifically Attorney Melissia R. Ball represented the plaintiff in his original workers'

19

compensation claim. Attorney/Partner Melissia R. Ball has done substantial work for Mr. Loyd. Counsel for Mr. Loyd estimates that more work will be necessary in preparing for a hearing of this petition as well as depositions of the adjusters and others. While Ms. Ball has a history of representing many people *pro bono*, this is not one of those cases. Mr. Loyd was informed at the start of this process that Myers & Ball LLP has a policy to bill at hourly rates for cases involving the denial of future medical benefits. Ms. Ball's time is normally billed at $450.00 per hour based upon her reputation, ability, and results as a Partner at Myers & Ball LLP for over fourteen years. In some cases, there is a substantial amount of paralegal work involved. Paralegal and law clerk time is billed at $165.00 per hour in these types of matters. No paralegal or law clerk time was computed for payment in this matter. These amounts are reasonable and common in Tennessee among the attorneys that actually take on these denied future medical cases.

Counsel relies upon the Affidavit of Attorney Melissia R. Ball, filed contemporaneously herewith as **Exhibit Q**, in support of an award of attorney fees in the amount to be determined since this matter is ongoing in that Mr. Loyd still has outstanding bills and other issues that must be taken care of. In an effort to avoid multiple addendums of time and affidavits, Affiant would request permission to submit a final Affidavit and time sheet when the issues are addressed since Mr. Loyd has outstanding unpaid bills. As of October 24, 2020 Affiant submitted 42.07 hours for an incomplete total of **$18,930.00** for hourly work done and reimbursement of expenses in an amount to be determined plus any court costs, filing fees and expenses.

For additional proof of the reasonableness of the time and attorney fee of Ms. Ball attached as Exhibit R. is an Affidavit from Attorney Gary E. Brewer.

Counsel also reserves the right to offer additional Affidavits and evidence as to the reasonableness of her fee.

20

## CONCLUSION

Walmart has failed or refused to provide treatment for Mr. Loyd's neck and shoulder. Within weeks of Ms. Ball filing the Request for Mediation, Walmart did finally provide medical treatment with the previous authorized treating physician for the shoulder, Dr. John Testerman. [His surgery was four-hundred sixty-seven days post the initial request for treatment.] Walmart has not paid bills related to the testing and surgery performed by Dr. Testerman. After the filing of the Request for Mediation, Wal-Mart did also provide a valid neck panel an treatment with the panel choice, Dr. Pryputniewicz. Following the January 2021 scheduling mixup, Dr. Pryputniewicz was willing to reschedule Mr. Loyd's appointment through Walmart but at the time of this filing, a follow up appointment has not been scheduled.

Mr. Loyd should not be forced to retain an attorney each time he seeks medical treatment. Mr. Loyd should not be forced to deal with the constant frustration and aggravation of Walmart's blatant failure to provide medical treatment under the settlement terms and under the laws of the state of Tennessee. Mr. Loyd would ask the Court to enforce the terms of the settlement and compel compliance.

Mr. Loyd made every effort to procure medical treatment throught Wal-Mart. The Court should order the Employer to pay the outstanding attorney fees and expenses Mr. Loyd has incurred in fighting to enforce his settlement agreement as well as his out of pocket expenses and obtain the medical benefits to which he is rightfully entitled. Wal-Mart should be ordered to pay Mr. Loyd's reasonable attorney fees and expenses.

Further, Mr. Loyd would request that Walmart be held in contempt and any and all civil and criminal penalties available should be entered against Walmart for failure to abide by the Final Order of the Court and willful refusal to comply with a clear order of the court in 2013 and

21

the Workers' Compensation Laws of the State of Tennessee. This behavior should not be allowed to continue against an injured worker such as Mr. Loyd.

Mr. Loyd would also request that a permanent injunction be issued against Walmart mandatorily directing compliance with the Court Order of December 17, 2013 requiring them to provide reasonable and necessary future medical treatment to the Plaintiff.

Respectfully submitted,

MYERS & BALL LLP

MELISSIA R BALL , BPR #025251
Attorney for David Loyd
331 East Broadway
Newport, Tennessee 37821
(423) 623-3091
melissiaball@bellsouth.net

22

## <u>CERTIFICATE OF SERVICE</u>

     **I, MELISSIA R. BALL, ATTORNEY**, hereby certify that the foregoing was served by email or the United States Postal Service on this the 31st day of March, 2021, upon:

Celeste M. Watson
Law Office of C. M. Watson
P.O. Box 52386
Knoxville, TN 37950
P: (800) 687-1677
F: (865) 223-6236
www.cmwatsonlaw.com
Attorney for Defendant

MELISSIA R. BALL

23